**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Case No. 18 CR 503-3 |
| | ) | |
| TOMMIE MORGAN | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

In September 2019, the Court sentenced Tommie Morgan to two consecutive sixty-month prison terms, for a total of 120 months. Morgan pled guilty to a charge of conspiracy to distribute heroin, fentanyl, and crack cocaine and a charge of possession of a firearm in furtherance of a drug crime, namely, the conspiracy. Morgan was fifty-eight years old at the time of sentencing.

Along with co-defendants Sedrick Body and Gregory Sullivan, Morgan participated in a relatively small but well-organized retail narcotics business. The selling was largely done by Body and Sullivan. Morgan's primary contribution was an apartment that was used as a "stash house"; the lead investigative agent described Morgan's role "as a sitter for the stash house."

When law enforcement officers searched Morgan's apartment, they found not just drugs but also four firearms. This is what led to the charge under 18 U.S.C. § 924(c). The firearm charge carried a five-year mandatory minimum sentence that was required to be imposed consecutively to Morgan's sentence for the drug crime. And the quantity of narcotics involved in the drug crime entailed a five-year mandatory minimum sentence as well.

The advisory Sentencing Guidelines range on the narcotics conspiracy charge was 87 to 108 months. The Court imposed a below-Guidelines sentence of 60 months, the mandatory minimum, plus another 60 months on the section 924(c) charge.

Morgan reported to prison in early January 2020 and has served about ten months of his sentence. He is serving his sentence at FCI Terre Haute.

Morgan has filed a motion for early release under 18 U.S.C. § 3582(c)(1)(A). He cites his medical conditions and the risks posed by the coronavirus. When Morgan filed his motion in mid-July 2020, only a small handful of inmates at FCI Terre Haute had tested positive for coronavirus. As of August 5, 2020, when the government filed its response to Morgan's motion, it represented that there had been a total of only four confirmed positive coronavirus cases at the prison. By August 19, when Morgan filed his reply, the total number of positive tests was up to ten. The current figures, however, are much higher. As of November 2, the number of inmates currently testing positive is eleven, but there are another 130 who previously tested positive and have recovered—a total of 141 inmates with positive tests. *See* https://www.bop.gov/coronavirus/ (last visited Nov. 2, 2020).[1] There has also now been an inmate death at FCI Terre Haute attributed to coronavirus disease. *Id.* The Court acknowledges the efforts of the Bureau of Prisons to prevent and control the spread of the virus at FCI Terre Haute and elsewhere, but at this point the virus can fairly be described as widespread within FCI Terre Haute. The Court also notes that the incidence of coronavirus infections is currently on the upswing, in particular in the Midwest, including Indiana.

---

[1] The actual positivity rate is likely somewhat higher, as BOP is not conducting universal testing of inmates.

Morgan's medical condition makes it far more likely that he will have a had outcome if he contracts the coronavirus. Morgan suffers from Type 2 diabetes, chronic hypertension, and sleep apnea (among other medical conditions), and his body mass index is 45, which falls within the classification of "morbid obesity." Under current guidance from the Centers for Disease Control and Prevention, at least two of these conditions (diabetes and severe obesity) put him at "an increased risk for severe illness" should he contract the coronavirus. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Nov. 2, 2020).

Morgan's motion is made under section 603(b) of the First Step Act, which amended 18 U.S.C. § 3582(c)(1)(A) to provide a greater role for courts in determining whether to reduce a defendant's sentence based on "extraordinary and compelling reasons" warranting a reduction. As amended, and as applicable here, the statute provides that

> [t]he court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they

3

>are applicable, if it finds that—
>
>>(i) extraordinary and compelling reasons warrant such a reduction;
>>
>>. . .
>
>>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

The parties agree that Morgan has satisfied the administrative exhaustion requirement. Specifically, he made a request to the prison warden for early release on May 14, 2020, and his request was rejected because he had served less than half of his sentence.

Second, there are "extraordinary and compelling reasons" that permit a sentence reduction. The coronavirus outbreak, the virus's confirmed presence at FCI Terre Haute and the evidence that it is not well-controlled at the institution, and the significant risk the virus poses to Morgan due to his medical condition certainly qualify. The Court does not consider in this regard the fact that it reduced the sentences of Morgan's co-defendants. The reasons the Court relies upon to make this finding are specific to Morgan and involve his medical condition and the unusual and unanticipated risks posed by the global coronavirus pandemic.

Third, a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." The policy statements issued by the Sentencing Commission even before the passage of the First Step Act included an open-ended provision broad enough to cover the circumstances argued by Sullivan. *See* U.S.S.G. § 1B1.13, app. note 1(D). *See, e.g., United States v. Reyes*, No. 04 CR 970, 2020 WL 1663129, at *2 (N.D. Ill. Apr. 3, 2020) (Leinenweber, J.).

4

Finally, section 3582(c)(1)(A) requires the Court to consider the factors regarding imposition of an appropriate sentence set forth in 18 U.S.C. § 3553(a). These include Morgan's history and characteristics; the nature and circumstances of the crimes; due consideration of the seriousness of the crimes; promoting respect for the law; providing just punishment; affording adequate deterrence; protecting the public from further crimes by Morgan; and providing him with any necessary services and treatment.

The amount of time served to date by Morgan does not adequately account for the seriousness of his offense; the Court concluded as much when it sentenced him to a prison term totaling 120 months. On the other hand, although Morgan has a criminal history, including prior felony narcotics convictions, it is all in the distant past: his last felony conviction was in 1992, nearly thirty years ago. When the Court sentenced Morgan in this case, it was bound by the mandatory minimum sentences prescribed by law. Though Morgan's crimes were significant, the required ten-year prison sentence was more than necessary to account for his relative culpability and impose just punishment. Morgan was significantly less involved in the day-to-day operation of the drug business than his co-defendants. Although he had four firearms in his apartment, one was inoperable because it was missing a firing pin, one was a hand-me-down from Morgan's grandmother and mother, and one was a shotgun at least 50 years old. The fourth was a more recently-purchased handgun, which may have been there as collateral for a drug debt, though that is unclear. The overall state of affairs was hardly what one might consider an armed camp or an active security operation. If the Court had not been legally required to impose a ten-year sentence, it would have imposed a term more commensurate with those imposed on Sullivan (fifty-four months) and/or

5

Body (forty-two months)

Since the Court imposed Morgan's sentence, matters have changed significantly. Morgan is now exposed to an infectious virus, the spread of which is almost certainly increased in a prison environment. And he is unquestionably at risk of a severe outcome if he contracts the virus. In short, Morgan faces a significant risk of serious bodily harm. Requiring him to be subjected to this severe risk for an extended period—given the length of time the coronavirus pandemic is likely to persist—does not, in the Court's view, amount to just punishment, nor does it promote respect for the law.

As a condition of reducing Morgan's prison term, however, the Court will add a supervised release condition of twenty-four months of home detention with location monitoring. In other words, Morgan's liberty will continue to be restricted in a very significant way for the next two years. And more broadly, he will be on supervised release, under the supervision of a probation officer, for five years. The Court is giving Morgan a very significant break in reducing his sentence. But Morgan should be aware that if he violates the conditions of his supervised release, knowing full well that this will subject him to reimprisonment, the Court will not hesitate to reincarcerate him.

## Conclusion

For the reasons stated, the Court grants defendant Tommie Morgan's motion for compassionate release [303]. The Court reduces the defendant's prison sentence to time served. The sentence reduction is conditioned upon a modification of the terms of the defendant's supervised release to add a requirement that he serve the first twenty-four months of his supervised release on home detention. Compliance with this condition shall be monitored by a form of location monitoring technology selected at the

discretion of the probation officer, and the defendant shall abide by all technology requirements.  The Clerk will prepare an amended judgment and commitment order.

Date:  November 2, 2020

_____
MATTHEW F. KENNELLY
United States District Judge